**Court of Appeals No. 22-55415**

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

M.A.R., et al.
*Plaintiffs and Appellants,*

v.

CITY OF LOS ANGELES, et al.
*Defendants and Appellees.*

---

Appeal from the United States District Court
Central District of California
District Case No.: 2:21-cv-02957-FWS-MAR
The Honorable John F. Walter

---

**APPELLANTS' REPLY BRIEF**

---

V. James DeSimone (SBN: 119668)
Carmen D. Sabater (SBN: 303546)
Ryann E. Hall (SBN: 306080) *Of-Counsel*
**V. JAMES DESIMONE LAW**
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone: 310.693.5561

Attorneys for Plaintiffs / Appellants,
**M.A.R., et al.**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................4

INTRODUCTION .................................................................................7

JURISDICTIONAL STATEMENT .........................................................8

    A.   Appellants are Not Attempting to Manipulate Appellate Jurisdiction ....8

THE DISTRICT COURT ERRED IN GRANTING QUALIFIED IMMUNITY ..12

    A.   Standard ................................................................................12

    B.   The District Court Erred When it Determined that the Use of Controlling Force Was Reasonable as a Matter of Law ...........................................14

        i.   The Level of Controlling Force Applied Cannot be Deemed Insignificant As a Matter of Law ..................................................14

        ii.   There Was No Compelling Interest in Using the Amount of Controlling Force ..........................................................................16

    C.   The District Court Erred When it Determined that Forcing Rivera to Remain in a Prone Position Was Reasonable as a Matter of Law.........20

    D.   The Officers' Conduct Violated Clearly Established Law....................24

        i.   The District Court Erred When it Determined that the Officers Did not Violate Clearly Established Law with Their Use of Controlling Force and Forcing Rivera to Remain in the Prone Position ..........24

        ii.   The District Court Erred When it Determined that Moser Did Not

Violate Clearly Established Law with His Use of the Taser .........28

E.   The Court Erred in Finding the Individual Officers Are Entitled to Qualified Immunity With Respect to Plaintiff's Fourteenth Amendment Claim ....................................................................................................31

F.   LAPD Policy is Relevant in Determining Whether the Use of Force was Excessive..................................................................................................31

CONCLUSION ........................................................................................................32

CERTIFICATE OF COMPLIANCE ......................................................................33

STATEMENT OF RELATED CASES ...................................................................33

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Anderson v. Allstate Insurance Co*., 630 F.2d 677 (9th Cir. 1980) ..........................7

*Andrews v. City of Henderson*, 35 F.4th 710 (9th Cir. 2022) .................................14

*Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) ..................... 23, 27, 29

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ...................................... 13, 14

*Butler v. Nat'l Cmty. Renaissance of Cal*., 766 F.3d 1191 (9th Cir. 2014) ..............9

*Chico–Velez v. Roche Prods., Inc*., 139 F.3d 56 (1st Cir. 1998) ..............................9

*City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500 (2019)....................................26

*City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021) .....................................12

*Dannenberg v. Software Toolworks Inc*., 16 F.3d 1073 (9th Cir. 1994) ..............7, 8

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001).............................................18

*Drummond ex rel. Drummond v. City of Anaheim*,

   343 F.3d 1052 (9th Cir. 2003) ..................................................................... passim

*Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000) ..............................................9

*Fassett v. Delta Kappa Epsilon (New York),* 807 F.2d 1150 (3d Cir. 1986)............8

*Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117 (E.D. Cal. 2016)................... 14, 24

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................................13

*Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017)...............27

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018).................................................. 11, 12, 29

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ....................................................29

*McCue v. City of Bangor*, 838 F.3d 55 (1st Cir. 2016)..............................................26

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003)....................................................13

*Merritt v. Cnty. of L.A.*, 875 F.2d 765 (9th Cir. 1989)................................................8

*Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003)..................................................16

*Monell v. Dept of Soc. Servs.,* 436 U.S. 658 (1978) ................................... 7, 8, 9, 10

*O'Donnell v. Vencor, Inc.*, 466 F.3d 1104 (9th Cir. 2006) ........................................9

*Pearson v. Callahan*, 555 U.S. 223 (2009)...............................................................23

*Pratt v. Gamboa*, No. 17-CV-04375-LHK,

   2020 WL 2512407 N.D. Cal. May 15, 2020) ....................................................9, 10

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................23

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) .................................................... 27, 30

*Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) ..................................................23

*Slater v. Deasey*, 789 F. App'x 17 (9th Cir. 2019)..................................... 21, 24, 25

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ..............................................16

*Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090 (9th Cir. 2006) .................20

*Tennessee v. Garner*, 471 U.S. 1 (1985)...................................................................13

*Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008) ....................................................25

*White v. Pauly*, 580 U.S. 73 (2017) ..........................................................................11

**Codes**

42 U.S.C. § 1983 ............................................................................................6

# INTRODUCTION

The District Court erred when it granted summary judgment on Appellees Officers Beckstrom, Romero, Lopez and Moser's ("Appellees") 42 U.S.C. § 1983 claims on the basis of qualified immunity as the conduct of the officers was not reasonable and violated clearly established law. Although the Parties agree that the applicable standard of review is that the Court must view the evidence in the light most favorable to the Appellant, throughout the Answering Brief Appellees encourage the Court to view the facts in the light most favorable to the officers. The Officers are not entitled to qualified immunity as they violated Daniel Rivera's rights that were clearly established by Ninth Circuit case law. Any reasonable officer would have known that the conduct violated the Constitution at the time of the incident.

The District Court, by its misapplication of the standard of review and legal doctrines pertaining to qualified immunity, allowed the Officers to escape liability for conduct that was not only unreasonable but which the Board of Police Commissioners found to be in violation of established policy--predicated on well-settled case law. Accordingly, Appellants respectfully request this Court reverse the District Court's ruling on Summary Judgment and remand the case for trial.

# JURISDICTIONAL STATEMENT

## A.    Appellants are Not Attempting to Manipulate Appellate Jurisdiction

The Parties only disagreement regarding jurisdiction is whether Appellants intended to manipulate appellate jurisdiction specifically as it relates to the *Monell* claim[1]. In dismissing the *Monell* claim—even without prejudice, Appellants have fully relinquished their ability to further litigate that claim due to the statute of limitations, leaving no potential causes of action in front of the federal court. The Ninth Circuit encourages "giving a practical rather than a technical construction to the finality rule, without sacrificing the considerations underlying that rule." *Anderson v. Allstate Insurance Co*., 630 F.2d 677, 681 (9th Cir. 1980).

The concern of piecemeal litigation is not present in this case as there are no federal causes of action "on hold." Appellees' reliance on *Dannenberg v. Software Toolworks Inc*., 16 F.3d 1073 (9th Cir. 1994) is misplaced. In *Dannenberg*, the District Court granted summary adjudication on all of Plaintiff's claims other than one cause of action under Section 11 of the Securities Act. *Id*. at 1074. The Parties then stipulated to dismiss the remaining Section 11 claim and, in the event the summary adjudication ruling was reversed on appeal, allow for the refiling of the

---

[1] The City and of Los Angeles, Moore and Ramos' brief focuses on the jurisdictional issue pertaining to whether the brief is premature and whether there is intent to manipulate appellate jurisdiction. As discussed, no intent to manipulate appellate jurisdiction exists.

cause of action by waiving any statute of limitations argument. *Id*. Meaning, a cause of action remained in the District Court pending a decision by the appellate court. The policy considerations at issue in *Dannenberg* were piecemeal appeals and the finality rule as the Appellants did not relinquish their ability to litigate unresolved claims. *Id*. at 1076-1077.

This concern is not present in this case as Appellants have no recourse that would allow them to refile the *Monell* claim and are therefore effectively barred from refilling. *Dannenberg* directly relies on a *Fassett v. Delta Kappa Epsilon (New York),* 807 F.2d 1150 (3d Cir. 1986) in which the appellate court exercised jurisdiction "after concluding "that the dismissal, which was nominally without prejudice, was for our purposes a final dismissal" because the statute of limitations would prevent the plaintiffs from refiling any dismissed claims." 16 F.3d at 1077 *quoting* 807 F.2d at 1055.

Appellees' concern that the claim can be brought under the relation back doctrine is similarly misplaced.[2] "[I]f the suit is dismissed without prejudice,

---

[2] Appellees' position that the California standard applies based on *Merritt v. Cnty. of L.A.*, 875 F.2d 765 (9th Cir. 1989) is a misstatement of the law as the Supreme Court amended Rule 15(c) in 1991 to incorporate the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient.

In any event, neither federal or state law allows for relation back. The Ninth Circuit has further clarified that under Rule 15(c)(1)(C), an amended complaint relates back to an original complaint only if the following conditions are met: " '(1) the basic

meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000); *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) (citing with approval *Chico–Velez v. Roche Prods., Inc.*, 139 F.3d 56, 59 (1st Cir. 1998) (citing eight federal circuits for the rule that the statute of limitations is not tolled when a complaint containing the same claims as a later suit is dismissed without prejudice).

Appellees' reliance on *Pratt v. Gamboa*, No. 17-CV-04375-LHK, 2020 WL 2512407 N.D. Cal. May 15, 2020) for the assertion that a voluntarily dismissal without prejudice does not break the relation back chain incorrectly relies on law that pertains to new claims against existing Defendants. Notably, a *Monell* claim is not alleged against individual officers, rather municipalities. The Northern District specifically recognized "the general rule under California law that an amended complaint that adds a new defendant does not relate back to the original complaint"

_____

claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.' " *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). "**Federal courts thus routinely reject the application of Rule 15(c)(1)(C) as to defendants that plaintiffs dismiss and subsequently seek to reintroduce**." *Pratt v. Gamboa*, No. 17-CV-04375-LHK, 2020 WL 2512407, at *10 (N.D. Cal. May 15, 2020) [emphasis added].

and that "[t]he addition of [new Defendants] relates back to Plaintiff's original complaint only if the exception to the foregoing rule applies, i.e. did their addition correct a misnomer by which an old defendant was sued." *Id*. at *9 (internal quotations and citations omitted). The court further recognized that "California law did not permit relation-back to original complaint when FAC dropped defendants and SAC attempted to re-name them because plaintiff's actions could not reasonably be construed as an attempt to correct a misnomer or defect in the description or characterization of the parties." *Id*.

In this case, Appellants dismissed the *Monell* claim alleged against the City and the Chief of Police. Appellants would have to seek the addition of the City and the Chief as new Defendants in the instant action, which is clearly precluded by both federal and state law. In *Pratt*, the court recognized that the relation doctrine could apply to causes of action that were previously dismissed against existing Defendants but did not hold that a previously dismissed Defendant could be added anew. *Id*. at *10. That is not the case here and Appellants do not have a manner in which to reassert the *Monell* claim against the City and the Chief and therefore appellate jurisdiction is proper.

# THE DISTRICT COURT ERRED IN GRANTING QUALIFIED

# IMMUNITY

## A.    Standard

What is consistent throughout the case law cited by Appellees is that, although clearly established cannot be determinative at a high level of generality, pre-existing law on the unlawfulness must be apparent.  Appellees' citation to *White v. Pauly*, 580 U.S. 73 (2017) is easily distinguishable as the involved officer was not aware of the conduct that occurred prior to his arrival and individuals were pointing a gun at the officers when he shot without issuing a warning. *Id*. at 76. The Court reasoned that "general statements of the law are not inherently incapable of giving fair and clear warning to officers…but "in the light of pre-existing law the unlawfulness must be apparent." *Id*. at 79 (internal quotations and citations omitted). The holding in *White* recognizes precedent that a violation may be established in an obvious case at a high level of generality—however due to the specific "unique facts" in *White*, the Court determined the right at issue was not clearly established: "[n]o settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers in instances like the one White confronted here." *Id*. at 80. Here, the officers confronted a man lying semiconscious on the ground in the prone position.  They had control of his limbs and repeatedly used a taser, which was objectively unreasonable and unnecessary. Placing Rivera on his

stomach and applying body weight while he was handcuffed, hogtied, and in distress violated clearly established rights.

Similarly, in *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) the Court focused on a factual scenario in which a reasonable officer would not have understood they were violating a clearly established right based on a lack of precedent. The Court held that "[w]here constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 1153. The Court held that a reasonable officer in Kisela's shoes would not have understood he was violating a clearly establish right by shooting a suspect who the officer believed posed a threat to a nearby individual. *Id*. The Court recognized that "[u]se of excessive force is an area of the law "in which the result depends very much **on the facts of each case**…." *Id*. (emphasis added).

In *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021) the Supreme Court again emphasized the importance of having rules that are clearly defined to enable a reasonable officer to know they were violating the rules. The Court held it "is not enough that a rule be suggested by then-existing precedent; the rule's contours

must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted" and held the officers were entitled to qualified immunity because there was no identified precedent finding a Fourth Amendment under similar circumstances. *Id*. at 11-12. Here, existing law should have alerted the officers that their conduct was not reasonable and was unlawful.

## B. The District Court Erred When it Determined that the Use of Controlling Force Was Reasonable as a Matter of Law

Appellees and the District Court failed to consider all the relevant facts and circumstances pertinent to the analysis under *Graham v. Connor*, 490 U.S. 386 (1989) in making the determination that the officers' conduct was reasonable. The appropriate determination is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397. The analysis must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (*quoting Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The analysis must "balance the amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003).

### i. The Level of Controlling Force Applied Cannot be Deemed Insignificant As a Matter of Law

Defendant argues, without support, that the use of controlling force in this

case was not significant. As recognized in *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) "all force—lethal and non-lethal—must be justified by the need for the specific level of force employed…. Rather than relying on broad characterizations, we must evaluate the nature of the specific force employed in a specific factual situation." *Id*. at 825. "Prevailing precedent in the Ninth Circuit is that law enforcement officers' use of body weight to restrain a "prone and handcuffed individual[ ] in an agitated state" can cause suffocation "under the weight of restraining officers," therefore, such conduct may be considered deadly force. *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1155 (E.D. Cal. 2016) *citing Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

Rivera was lying semiconscious on the bottom of the wash when the officers initially approached and jumped on him. It was unreasonable for the officers to pounce on a "'relatively calm' suspect without providing any warning where the suspect is not posing an immediate danger to anyone, resisting arrest, or trying to flee unless the officers first attempt a less intrusive means of arrest." *Andrews v. City of Henderson*, 35 F.4th 710, 720 (9th Cir. 2022). It was further unreasonable for the officers to use sustained body weight on Rivera when he was clearly in distress, in a prone position, and posing no threat to the officers or the public. Rivera was on his stomach while hobbled and handcuffed for two and half minutes with the Officers

holding him down. (2-ER-291; 3-ER-566:2-16; 6-ER-1204 at 14:13-18:00).

Although Appellees attempts to qualify the force as minimal compared to the forced used in *Drummond*, this is not supported by the facts of the case when viewed in the light most favorable to Appellants. The Defendants' interpretation of the force as "not intrusive" is not dispositive on the amount of force actually used. In *Drummond*, two officers leaned onto the Plaintiff's neck and upper torso. *Id*. at 1054. Appellees ignore the portions of the BMV that clearly shows that three officers pressed body weight on Rivera's back and body in their attempt to handcuff him— all the while Rivera was attempting to breathe. (1-ER-18; 2-ER-285; 3-ER-427:13-19). Triable issue exists as to whether Rivera ever even tried to strike, hit or kick any of the officers. (2-ER-278-286). Appellants presented triable issue of fact pertaining the significance and reasonableness of the body weight used.

### ii. There Was No Compelling Interest in Using the Amount of Controlling Force

At the time the controlling force was used, Rivera was not moving and facedown in the wash and there was therefore no immediate need to aggressively use force to detain him. In *Drummond*, the court recognized that "the degree of force used by [the police] is permissible only when a strong government interest *compels* the employment of such force." 343 F. 3d at 1057. "[T]he government interest in safely effecting an arrest must be examined in light of the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations and quotations omitted).

The severity of the crime at issue provides little basis for the use of force under the facts of this case. *Smith v. City of Hemet*, 394 F.3d 689, 702-703 (9th Cir. 2005). It is difficult to say there was any crime "at issue" when the officers approached Rivera at the bottom of the wash. Although he was a burglary suspect, the amount of force was not used to stop any robberies or detain a felonious fleeing criminal- rather it was to detain an already motionless suspect. In *Miller v. Clark Cnty*., 340 F.3d 959 (9th Cir. 2003) the court determined that the government had an "undeniable legitimate interest in apprehending criminal suspects." *Id*. at 964. A stark difference between Rivera and the Plaintiff in *Miller* is that Rivera was, in effect, already apprehended when the officers went hands on while the police were actively in pursuit of Miller. *Id*. at 961. Throughout the encounter, four officers were physically detaining Rivera while others watched from the embarkment. (2-ER-278, 3-ER-502:23-503:6, 4-ER-576:17-577; 6-ER-1202 at 10:00-10:30, 1203 at 10:00-11:10, 1204 at 9:57-11:10). There was simply no risk that Rivera was not going to be apprehended.

Second, Rivera did not pose a threat to anyone either before or after he was placed in handcuffs. Appellees make a passing attempt to argue that the officers were

in any danger based on the officers' inability to search Rivera. However, prior to going hands on, the officers could clearly see that Rivera's hands were empty. (2-ER-276; 4-ER-575:5-19). As recognized in *Drummond*, "after he was "knock[ed] ... to the ground where the officers cuffed his arms behind his back as [he] lay on his stomach, a jury could reasonably find that he posed only a minimal threat to anyone's safety." *Drummond*, 343 F.3d at 1058 (internal quotations omitted). Rivera did not pose a risk to officers or the public throughout the encounter. Plaintiffs presented undisputed evidence that Rivera was face down in the wash when four officers approached him, with two other officers nearby watching and providing cover. (2-ER-277-278). Rivera remained face down when the officers went hands on and remained in that position throughout the encounter. (2-ER-277). The officers never lost control of Rivera. (2-ER-282, 284-285). Rivera never tried to strike, hit or kick any of the officers. (2-ER-278-286). The threat that Rivera would or could escape or harm the officers is illusory. As recognized by the Board of Police Commissioners, no reasonable officer would have perceived Rivera as an immediate threat to the officers or the public. If the Board of Police Commissioners reached this conclusion, there is obviously triable issues of material fact. The District Court wholly ignored this important element instead of factoring it into the analysis.

Third, triable issue exists as to whether the officers should have perceived Rivera's actions as an attempt to evade or flee arrest. Appellees do not cite any law

in support of their argument that Rivera was attempting to evade or flee arrest, but instead argues the facts in light most favorable to the involved officers—which should not be considered on this appeal. Rivera did not hit, kick, bite, or spit at officers. (2-ER-286; 3-ER-488:17-489:1, 488:23-489:10; 6-ER-1205 at 12:05-14:00). Instead, Rivera's body tensed up as he responded in pain to the officers' use of force. (2-ER-280-281, 283, 288). Although some force may have been justified, as is inherent in any detention, properly trained officers should have recognized that Rivera was not violently resisting arrest, rather he was struggling to breathe due to their tactics. (2-ER-293; 4-ER-631; 7-ER-1381:1-9, 1381:3-1382:1).

Finally, the *Drummond* court recognized that a "detainee's mental illness must be reflected in any assessment of the government's interest in the use of force:"

> The problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense. In the former instance, **increasing the use of force may, in some circumstances at least, exacerbate the situation**; in the latter, a heightened use of less-than-lethal force will usually be helpful in bringing a dangerous situation to a swift end. In the case of mentally unbalanced persons, the use of officers and others trained in the art of counseling is ordinarily advisable, where feasible, and may provide the best means of ending a crisis. ... Even when an emotionally disturbed individual is "acting out" and inviting officers to use deadly force to subdue him, **the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual**....**we emphasize that where it is or should be apparent to the officers that the individual involved is emotionally disturbed,**

19

**that is a factor that must be considered in determining, under *Graham,* the reasonableness of the force employed**. *Drummond*, 343 F. 3d at 1058 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (emphasis added).

Here, it was abundantly clear that Rivera was not of a sound mental state at the time the controlling force was utilized. He fell to the ground, was unresponsive to commands, and was not moving. (2-ER-278; 3-ER-458:6-13, 2-ER-278; 3-ER-456:15-17; 6-ER-1202 at 5:55-6:05, 9:00-10:24, 1203 at 10:00-11:10, 1204 at 9:57-11:10). The District Court erred when it failed to consider whether it should have been apparent to the officers that Rivera needed help and the use of force was not reasonable and rather exacerbated the need for force. It was improper for the District Court to conclude that the use of controlling force was reasonable as a matter of law.

## C. The District Court Erred When it Determined that Forcing Rivera to Remain in a Prone Position Was Reasonable as a Matter of Law

Preliminarily, forcing Rivera to stay in the prone position did not further any government interest. The severity of the crime at issue is not a determining factor—particularly when the use of the prone position was implemented after Rivera was handcuffed and hobble tied; posed absolutely no threat to the officers; and there was no credible resistance due to the restraints. *See Smith*, 394 F.3d at 701. With the government interest so low, it cannot be determined as a matter of law that the use of force was reasonable.

Defendants' assertion that Rivera rolled into a prone position on his "own volition" is their interpretation contradicted by the Officers' physical contact. It is hard to imagine someone who is mental distress, has their hands behind their back, and legs tied as being able to make intentional decisions. Rivera, while being held and controlled by the Officers, rolled onto his stomach. (2-ER-290; 3-ER-564:7-565:6; 6-ER-1204 at 15:00-15:45). Although Romero was in physical contact at the time Rivera rolled onto his stomach, Romero made no effort to keep Rivera off his stomach while he was hobbled and handcuffed. (2-ER-291; 3-ER-564:24-565:6). Defendants' characterization that Rivera was "talking" is not supported by the evidence. Rather, Rivera was in distress and not coherent at the time he was in the prone position. (6-ER-1204 at 14:16-20:00).

*Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1092 (9th Cir. 2006) is not instructive as the Ninth Circuit concluded that summary judgment was appropriate because Plaintiff "has not cited any authority to support her argument that **simply laying a suspect on his stomach** can constitute excessive force, and we have found none." *Id*. at 1098 (emphasis added). Notably, the Plaintiff in *Tatum* was not placed in a hobble and was left on his stomach for just over a minute. *Id*. at 1093, 1098. This Court determined that placing the Plaintiff in prone position was "objectively reasonable under the circumstances of his arrest." *Id*. at 1097. In *Tatum*, the Plaintiff partially escaped during the arrest, continued to resist the arrest, and

21

kicked and struggled throughout the encounter and "the officers needed to incapacitate [the decedent] to both protect themselves and to protect him." *Id.* at 1093, 1098. There is no evidence that the officers needed to place Rivera in prone position to protect themselves as River was fully restrained. (2-ER-291; 3-ER-566:2-16; 6-ER-1204 at 14:13-18:00, 139, 163).

This Court recognized, in *Slater v. Deasey*, 789 F. App'x 17, 20 (9th Cir. 2019), that applying pressure—including a knee to the rib and a foot against the shoulder--to a prone, handcuffed and hobbled individual raised triable issue of material fact as to whether the conduct constitutes excessive force. *Id.* at 20-21. The facts of this case are more similar to those in *Slater* than *Tatum* as officers' conduct exceeded merely laying Rivera on his stomach. The officers actively precluded Rivera from rolling onto his side and used their body weight to accomplish this goal. (2-ER-291; 3-ER-566:2-16; 6-ER-1204 at 14:13-18:00, 139, 163). Defendants' assertion that Rivera was immediately placed one his left side after being handcuffed and hobbled is incorrect—Rivera was on his stomach while hobbled and handcuffed for two and half minutes with the Officers holding him down. (2-ER-291; 3-ER-566:2-16; 6-ER-1204 at 14:13-18:00). Throughout this time, Romero had his hand on Rivera's upper back, preventing him from rolling onto his side. (2-ER-291; 3-ER-567:3-11; 6-ER-1204 at 14:13-18:00). Romero and Beckstrom applied weight to Rivera's back while he was facedown handcuffed and hobbled. (2-ER-291; 3-ER-

525:22-526:1; 6-ER-1204 at 14:13-18:00). At one point, Beckstrom put his knee on Rivera's back. (2-ER-291; 3-ER-527:23-528:3; 6-ER-1204 at 17:30-17:45). After two minutes and thirty-five seconds of Rivera being held on his stomach, Ramos yelled down to the officers instructing them to put Rivera on his side. (2-ER-292; 4-ER-588:7-20). Despite Appellees' argument to the contrary, Romero admitted that it was feasible to put Rivera on his side or in a seated position. (2-ER-292; 3-ER-567:23-568:3). The Board of Police Commissioners found that the officers' "decision to allow [Rivera] to remain in a prone position for two minutes and 35 seconds was a substantial deviation from Department training." (2-ER-293; 4-ER-620-621; 7-ER-1386:17-1387:16, 1388:1-1389:8, 1392:25-1393:22; 1396:8-10).

Similarly, Appellees' assertion that Rivera did not exhibit any signs of distress cannot be decided as a matter of law. Rather, Appellants presented substantial evidence that Rivera was exhibiting signs consistent with a state of delirium. (2-ER-293; 3-ER-507:25-508:3, 523:9- 524:7). The City's policies based on established law clearly directs that if a suspect is in a state of agitated delirium, an officer should put the suspect in a recovery position—left or right-side lateral position or seated. (2-ER-293; 3-ER-509:8-20; 4-ER-635-637). Instead, the Officers kept Rivera face down in the prone position while handcuffed and hobbled for at least 2 minutes and 35 seconds after they knew he had been jolted by an electric current four times and was in a clearly vulnerable state. (2-ER-293; 6-ER-1204 at 14:13-18:00). A

reasonable jury could find that the officers forced Rivera to remain in the prone position by using their body weight and that said force was excessive.

**D.    The Officers' Conduct Violated Clearly Established Law**

"[G]overnment officials are not entitled to qualified immunity if (1) the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendants'] conduct violated a constitutional right" and (2) "the right was clearly established" at the time of the alleged violation. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871–72 (9th Cir. 2018) *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001), *rev'd on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  If a "genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

> **i.    The District Court Erred When it Determined that the Officers Did not Violate Clearly Established Law with Their Use of Controlling Force and Forcing Rivera to Remain in the Prone Position**

At the time of the incident, it was clearly established that applying pressure to an individual's back and keeping an individual in prone position could result in a

24

constitutional violation. In 2016, the Eastern District of California cited to the Ninth Circuit's decision in *Drummond* and held that "[p]revailing precedent in the Ninth Circuit is that law enforcement officers' use of body weight to restrain a "prone and handcuffed individual[ ] in an agitated state" can cause suffocation "under the weight of restraining officers," therefore, such conduct may be considered deadly force." *Garlick,* 167 F. Supp. 3d at 1155, *quoting Drummond*, 343 F.3d at 1056–67. The court went on to conclude that "*Drummond*, a Ninth Circuit case from 2003, which demonstrates that prior to the incident the law was clearly established that multiple officers' alleged use of prolonged body-weight pressure to a suspect's back was known to be capable of causing serious injury or death." *Garlick* at 1158 citing 343 F.3d at 1056. A trier of fact could find that the use of body weight to restrain Rivera, who demonstrated significant signs of being in an agitated state, was a clear violation of the law informing the officers that the use of body weight on a suspect's back could result in death.

Similarly, in 2019 this Court recognized that the circumstances in *Slater* were sufficiently analogous to *Drummond* "such that Defendants were on notice that their use of force violated the Fourth Amendment." *Id*. at 21. In *Slater*, the Court held that the officers violated clearly established law in the application of the second and third hogtie:

> Slater was hogtied and placed on his stomach in the back of the police
> car, and the deputies applied pressure to his body during the second and

third hobbling, after pressure was already applied to his shoulders in the prone position during the first hobbling. Deputy Gentry testified that he placed pressure on Slater's left rib area with his knee while applying the second hobble. Deputy Brandt, who arrived after the application of the first hobble, and who was positioned on the driver's side of the car, testified that he put his foot against Slater's shoulder to prevent Slater from sliding out of the car. Prior to closing the patrol car door, Deputy Brandt heard Slater make a spitting noise. Before long, Slater had vomited and largely stopped breathing. We conclude that the circumstances here are sufficiently analogous to *Drummond* such that Defendants were on notice that their use of force violated the Fourth Amendment.

*Id*. at 21.

The Ninth Circuit went on to explain that "no court has interpreted *Drummond* to require a restrained suspect to "plead for air" before receiving Fourth Amendment protection." *Id*. at fn. 3 citing *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) ("[A]pplying pressure to [a suspect's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions.") This is consistent with LAPD policy that a suspect who is handcuffed and hobbled should not be placed on their stomach as there is a possibility of positional asphyxiation. (2-ER-293; 3-ER-509:8-20; 4-ER-635-637, 1204 at 14:13-18:00). The officers placed pressure on Rivera while he was in prone position in their use of controlling force. The officers then proceed to apply continuous pressure to maintain him in the prone position. The facts are sufficiently similar to *Slater*, 789 F. App'x 17 and *Drummond ex rel. Drummond*, 343 F.3d 1052 (9th Cir. 2003) to put a reasonable officer on notice that his conduct

26

was unlawful.

Defendants have conceded that "it [is] clearly established . . . that exerting significant, continued force on a person's back while that person is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force". *See* Answering Brief at pg. 36; *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) [collecting cases, including *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003)]. It cannot be concluded as a matter of law that Rivera was not subject to significant, continued force, on his stomach while incapacitated. Reasonable officers would have sat Rivera up and not put pressure on him as he lay nearly unconscious on his stomach, conduct which clearly violates the 4th Amendment.

Defendants' reliance on *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500 (2019) is misplaced. In *City of Escondido, Cal.*, the Supreme Court remanded the case to the Ninth Circuit on the basis that "[t]he Court of Appeals failed to properly analyze whether clearly established law barred [the officer] from stopping and taking down [the Plaintiff] in this manner as [the Plaintiff] exited the apartment." *Id*. at 504. The violation due to the use of controlling force and maintaining Rivera in a prone position was clearly established.

ii.     The District Court Erred When it Determined that Moser Did Not Violate Clearly Established Law with His Use of the Taser

Ninth Circuit precedent establishes that Moser's use of the Taser was in violation of clearly established law. This Circuit explicitly held "that use of a taser in drive-stun mode on a person who "actively resisted arrest," but posed no "immediate threat to the safety of the officers or others," constituted excessive force" and that the Constitutional violation was clearly established for qualified immunity purposes in 2011. *Bonivert,* 883 F.3d at 880.  The violation was undoubtedly clearly established for the purposes of qualified immunity.

In *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017) this Court reasoned that  "[b]y the time [Plaintiff] was prone and surrounded by multiple officers, there would have been no continuing justification for using intermediate force: [Plaintiff] was on the ground after his body "locked up" as a result of repeated taser shocks; he had no weapon and was making no threatening sounds or gestures." *Id*. at 1130-1131. The Court went on to hold that the law on the use of Tasers was clearly established in 2010 such that "…continuous, repeated and simultaneous tasings are different from isolated shocks. Any reasonable officer would have known that such use can only be justified by an immediate or significant risk of serious injury or death to officers or the public." *Id*. at 1132. The court recognized the clearly established law that "[a]n officer's use of *deadly* force is reasonable only if the officer

28

has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id*. citing *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (internal quotations and citations omitted)(emphasis in original). Taking the facts most in light most favorable to the Appellants, Rivera was on the ground surrounded by multiple officers and posed no threat to the officers. A reasonable officer would have known the clearly established law that Moser's use of the taser posed serious risk of injury or death and such force was only authorized only if there was an immediate or significant risk of serious injury to the officers or the public.

The District Court recognized that Moser delivered three applications of the Taser in drive stun mode but made no finding regarding whether Rivera posed an immediate threat to the safety of the officers or others at the time. (1-ER-6). Triable issue of material fact exists as to whether Rivera posed a threat to the officers or the public at the time the Taser was used. (2-ER-287; 3-ER-515:13-18; 6-ER-1204 at 11:1011:20; 3-ER-464:17-19; 6-ER-1205 at 13:2013:56). Moser used his taser on Rivera approximately 30 to 50 seconds after the officers went hands on. (2-ER-288; 3-ER-463:3-7). The first deployment was with Taser darts for pain compliance. (2-ER-288; 3-ER-470:5-7, 473:25-474:22). Sixteen seconds after the first deployment, Moser applied the taser a second time in three-point drive stun. (2-ER-288; 3-ER-474:23475:1, 476:21-477:2, 490:11-22). This application was done 16 seconds after

the first deployment of the Taser. (2-ER-288; 3-ER-490:11-22). There were approximately fourteen seconds between the second and third application. (2-ER-288; 3-ER-491:4-7). Moser then utilized the taser a fourth time because Rivera was purportedly bucking his hips. (2-ER-289; 3-ER-479:1-7). There were approximately eleven seconds between the third and fourth Taser application. (2-ER-289; 3-ER-491:18-23).

Although Appellees attempt to factually distinguish *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011), they ignore that the Ninth Circuit held in 2011 that "the use of a taser constituted excessive force" when used three times over the course of less than a minute when the suspect poses no threat to the officers, actively resisted arrest but did not evade arrest by fight and no other exigent circumstances existed at the time. *Id*. at 446, 448. Although the facts are not identical, they are sufficiently similar and the law is clear. As this Court recognized, "[i]f qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Id*. at 442. Here, the Taser was applied four times and triable issue exists as to whether Rivera posed any threat to the four officers arresting him and whether any exigent circumstances existed.

Again, Appellees' attempt to factually distinguish *Bonivert* is unpersuasive as the Ninth Circuit held "that use of a taser in drive-stun mode on a person who

"actively resisted arrest," but posed no "immediate threat to the safety of the officers or others," constituted excessive force." *Id*. at 880. This holding is directly on point to the triable issues in this case. As recognized by the Supreme Court an officer violates a clearly established right when "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S. Ct. at 1153. The holding in *Bonivert* clearly covers the factual scenario of this case that would put a reasonable officer on notice that Moser's conduct violated the constitution.

**E.      The Court Erred in Finding the Individual Officers Are Entitled to Qualified Immunity With Respect to Plaintiff's Fourteenth Amendment Claim**

Appellees' only argument against the Fourteenth Amendment claim is that recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation. Since the officers are not entitled to qualified immunity, this Court should reverse the District Court's holding and allow the Fourteenth Amendment claim to proceed to trial.

**F.      LAPD Policy is Relevant in Determining Whether the Use of Force was Excessive**

Although Appellees' recitation of the law is mostly correct, they ignore the Ninth Circuit precedent holding that police policy may be relevant in determining

whether a use of force was excessive, but "only when one of [the policy's] purposes is to protect the individual against whom force is used." *Scott*, 39 F.3d at 916. Clearly, the Taser policy (undisputed that a jury could find this conduct excessive) and the Department training not to leave an individual in prone position were implemented to protect the individual against whom force is used. The policies may be properly utilized in the analysis of whether the use of force was excessive.

## CONCLUSION

Due to a flawed ruling by the District Court, the Officers were shielded from liability under the misapplication of the doctrine of qualified immunity. Justice requires that the decision below be reversed, and the case proceed to trial.

Respectfully Submitted,

Date:  March 6, 2023                    By:  ___*/s/ V. James DeSimone*___
                                        V. James DeSimone, Esq.
                                        **V. JAMES DESIMONE LAW**

                                        Attorney for Plaintiffs/Appellants,
                                        M.A.R., et al.

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies under Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1, that the attached Reply Brief is proportionally spaced, has a type face of 14 points, Time New Roman font, and pursuant to the word-count feature of the word processing program used to prepare this brief, contains less than 6,451 words, exclusive of the matters that may be omitted under Rule 32(a)(7)(B)(iii).

**STATEMENT OF RELATED CASES**

Pursuant to Ninth Circuit Rule 28-2.6, Appellants confirms they are not aware of any related cases pending in this Court.

Respectfully Submitted,

Date:  March 6, 2023                              By:      */s/ V. James DeSimone*
                                                                        V. James DeSimone, Esq.
                                                                        **V. JAMES DESIMONE LAW**

                                                                        Attorney for Plaintiffs/Appellants,
                                                                        M.A.R., et al.

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

### APPELLANTS' REPLY BRIEF

| | |
|---|---|
| Mr. Christian R. Bojorquez, Esq.<br>Christian.bojorquez@lacity.org<br>200 N. Main Street, 6th Floor<br>City Hall East<br>Los Angeles, California 90012<br>Caroline.castillo@lacity.org | Attorneys for Defendants/Appellees,<br>CITY OF LOS ANGELES and<br>POLICE CHIEF MICHAL MOORE |
| Mr. James R. Touchstone, Esq.<br>jrt@jones-mayer.com<br>Ms. Denise L. Rocawich, Esq.<br>dlr@jones-mayer.com<br>Ms. Melissa M. Ballard, Esq.<br>mmb@jones-mayer.com<br>JONES MAYER<br>3777 N. Harbor Blvd.<br>Fullerton, California 92835<br>wag@jones-mayer.com<br>sks@jones-mayer.com | Attorneys for Defendants/Appellees,<br>OFFICER BRETT BECKSTOM,<br>OFFICER MICHAEL LOPEZ,<br>OFFICER TYLER MOSER, and<br>OFFICER ANGEL ROMERO |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed this 6th day of March, 2023, in Los Angeles, California.

By: _____ */s/ V. James DeSimone* _____
V. James DeSimone, Esq.
**V. JAMES DESIMONE LAW**
Attorney for Plaintiffs/Appellants,
M.A.R., et al.